Everything okay here? Can you see Judge Rakoff okay? A little in the peripheral over there. You can't tell how handsome he truly is, right? I can tell. Oh, okay. Good morning, Your Honor. Good morning. My wife wants rebuttal time on that. Thank you, Your Honor. And may it please the Court. My name is Robert Burke, B-E-R-K-E. I represent the petitioner Martine Leon-Briviesca. I would respectfully like to reserve two minutes for rebuttal. Aspirationally, I'd like to reserve two minutes. All right. Thank you. If we take all our time, usually I give people a little extra if we take up all your time. I appreciate that, Your Honor. Thank you. So I went through some machinations in my head as to where to start the argument today. And the one thing that kept coming back into my mind, and therefore the place I've chosen to start, is this case initiated with an NTA in 2010. Now, what's happened between 2010 and the 15 years until 2026, or 16 years already? And that is that between this court and other courts and the Board of Immigration Appeals, there has been something of a debate going on about what is the definition of a crime of child abuse. It's gone back and forth. Now, a lot of that debate has centered on the issue of whether actual harm is necessary in order to sustain a charge under 237A2E. But the bottom line is that when this court defers to the board, it says actual harm is necessary. When this court doesn't defer to the board, it reaches the conclusion that it doesn't. The last time that this court looked at it in sort of a, in its own light, in its own way, which I would say is for Gozo. Which I guess is giving the best reading of the statute is what we have to do, right? Yes, but you can't. That's kind of where I'm going with this. We have a statute that once we, if we assume that Congress knows what it's doing, right? Then we, then Congress has the obligation to write a law that people understand. The whole point of the void for vagueness doctrine, the whole reason that's tied up in due process issues, the whole reason is so that a petitioner or a respondent in removal proceedings, like my client, can say, oh, if I take this plea, I'm subject to removability. Or if I take that plea, I'm not subject to removability. This plea has that consequence. This plea doesn't have that consequence. Well, okay, but the California statute appears to require a showing of circumstances or conditions likely to produce great bodily harm or death. Why isn't that sufficiently objective to defeat a claim of void for vagueness? Because we're talking about a removal statute, right? We're talking about a removal statute. And so actually I see a nuance to your question that my answer is not going to address. So why doesn't that remove the issue of void for vagueness? It doesn't remove the issue of void for vagueness because we can look right back at the Maya and we can say we have to look at what an average case, what an ordinary case in this circumstance. So what does it mean? We can start there. What's an ordinary case of under circumstances likely to cause great bodily injury? Is that, to use an example from the Valdez case, is that putting a baby on a bed that's a high bed without rails? Is this negligent parenting? One thing I think you have against you is that other circuits have weighed in since all this has happened. Like the Fourth Circuit in Cruz, the Fifth Circuit in Sandoval or Guetta, and arguably the Eleventh Circuit in Bastillas versus the U.S. have held that 1227 encompasses child endangerment even when the child is not hurt. So why is that not the best reading of the statute? Because what you're asking us to do is going to then create a split in the circuit, right? Well, this is why every argument I make is going to come back to we have a bad statute because in my case I'm not really arguing that. My case is there's no intent. There's no level of intent. When I misunderstood the court's question, when I had to go back and change the answer I was going to give, it's because my issue has to do with any level of willfulness, right? Well, okay. So does the level of mens rea required for a conviction under the California statute differ from the level required by 1227A2EI? So how does it differ? Only prong two, because prong two and people v. Valdez, and how convenient I just happen to have it in front of me. I can read to you. It says, moreover, use of a general intent standard is appropriate when the statute criminalizes commission of a battery or direct infliction. So Valdez says there is a different mens rea for the second means by which you can violate 273A sub a. No mens rea, just a general intent, right, to do the act, but with no awareness or no relationship to the harm. So just remind me, what was that behavior in your case? In my case? Yes, the facts in your case. It was the inappropriate touching of a 17-year-old girl. Okay. With more details, obviously.  That's the grommet. Can I ask you, so what is the definition of a crime of child abuse, child neglect, or child abandonment that you want us to adopt? What do I want you to adopt? Yes. So let me start with, I'm not necessarily that unhappy with Velazquez. I'm sorry to everybody in the audience to say that. I'm not necessarily unhappy with it because of the framing of my issue, or at least the way I framed my issue, which focuses on the intent element, which I can speak more to in a second. However, remember that? So you're not advocating for an overarching definition of what that crime is. You just think that it includes a heightened type of mens rea. Oh, no. I'm much more radical than that, Your Honor. Okay. I think that whole statute, I think all of 237A2E is legal garbage. And I apologize for the strong use of the words. But Congress gave us something that we can't settle, right? Not only that. It's too vague. It's too vague. For 15 years. Oh, I'm sorry, Your Honor. I know. It's a little vague. Go ahead, Judge Rakoff. So I was thinking your most recent comments is not only addressed to the vagueness issue. So the federal statute refers to a crime of child abuse, child neglect, or child abandonment. And crime in the federal sense normally requires some form of mens rea. And indeed, here in the California statute, as interpreted by the California Supreme Court, we have a situation where not only is no mens rea required, but it could be simple negligence, albeit, quote, criminal negligence, but it's just negligence involving, in effect, accidental violations. And that's despite the fact, I might add, that the California statute says willfully, repeatedly. But it's been interpreted by the California Supreme Court totally differently from how the Supreme Court of the United States interprets willfully. So what I thought you were saying, at least in part, when you were talking about intent, is that a lack of intent is permitted under this particular California statute that is not encompassed in what Congress clearly meant when they referred to a crime of X, Y, and Z. I agree with Your Honor because Your Honor makes me smarter than I actually am in your summary of my argument. The one thing, though, is when you said negligence, albeit criminal negligence, the Valdez case actually says otherwise. It doesn't have to be criminal negligence. It's just a general intent, the same intent as a battery. And I, for what it's worth, but we're now getting to California law, but I don't really understand, as the California Supreme Court has interpreted it, what the difference is between negligence and criminal negligence because if it involves a state of mind at all, it becomes recklessness, which is a separate category that is included. So negligence, criminal or otherwise, must be a lesser something that's accidental. Well, the way I can, with apologies, the way I can kind of dodge that question is to say if all we need is a general intent, then we don't even need to hit negligence, much less criminal negligence. That's true. So the difference being that with the general intent, there doesn't need to be any mental relationship to an outcome. It doesn't have to be foreseeable. It doesn't have to be likely. You don't have to know that there's this outcome possible, et cetera, et cetera. So instead of drawing a distinction between negligence and criminal negligence, which I'm not prepared to do, and I apologize for that, I dodged the question by simply saying we don't even need negligence to sustain a conviction under prong two of 237. I'm sorry, of the California Statute 273A. So counsel, I'm not sure I understand your mens re argument. So Congress says a crime of child abuse and child neglect or child abandonment.  And in all cases where they specify these types of crimes, we're supposed to look at the categorical crime and then look at what the mens re is in the categorical crime. And so here, you know, at least under the Collins concurrence and Diaz-Riad-Riguez, categorically child neglect has had criminal negligence as a mens re. So what's the ambiguity? What's the void for vagueness problem? Oh, the void for vagueness problem? No, we're conflating an argument here. I'm very happy with any finding that says criminal negligence is the minimum threshold of intent. I'm very happy with that. So I don't challenge the statute from that perspective. I challenge the statute on a void for vagueness level because we have had to go back over this time after time after time for 15 years. And we can't settle it because Congress chose language. So I'm not sure I understand your argument. You're happy with criminal negligence as being the minimal standard? I am, but that doesn't solve the problem with the statute. Why not? Because, again, Congress chose language that we can't apply in any kind of rational or equal way, especially across states that have different ideas and different concepts. I mean the states are not settled on what constitutes child endangerment. Diaz is no longer a case that we can use as binding authority. But, boy, did it go through the whole litany of states and how these state statutes are. And we got to compare them to language that Congress chose that has no meaning. It's meaningless language. But why isn't it an answer that your adversary might give to the point you're just making bad intent that by crime all Congress meant was whatever the state, whatever state is the relevant state, considers a crime? And that, to take an extreme example, we're not presented with. But if a state determined that the protection of children was so important that it would be a crime to expose them to any form, any risk of harm, even if it was done totally unintentionally, accidentally. Why couldn't it be argued that when they use the terms of the federal statute convicted of a crime that included that extreme situation? If I understand your question correctly, Your Honor, I think it goes all the way back to Taylor. It's because we have to have a uniform treatment of immigration matters across the country. So it's an uncomfortable situation under the law to say some conduct in Arizona is a removable offense, but the identical conduct in California is not a removable offense, which is why Taylor starts with you've got to come to some generic definition. So what they did in Diaz here in the Ninth Circuit – and again, Diaz, not a good case anymore, decision vacated. My understanding is we can't rely on that for anything at all, but the logic in it is good, and I think it could be used persuasively. They went ahead and they did a survey of all 50 states, and they said we can't glean a generic definition by looking at what all 50 states does. So you can't get past even that first prong of the Taylor definition of coming up with a generic definition based upon a survey of the states. You can't do it by looking at other federal statutes. They tried doing that. You can't do it by looking at Black's Law Dictionary. We tried doing that. So the only thing that this court has ever been able to do is say, well, we defer to the Board of Immigration Appeals, but now we can also take the position that the Board of Immigration Appeals has no particular expertise in interpreting state laws or what have you. So deference isn't owed, and of course that's the reason I'm back here six years later or five years later, because we're out of the deference. But I want to make clear to the court. I'm making two minutes. Well, you're over time, so let me find out. You're two minutes over. Let me find out if my colleagues have any additional questions. They don't. So I will give you two minutes for rebuttal, but you're already over. I appreciate you, Heather, and I apologize for going over. I know it's confusing. All right, we'll hear from the government. Good morning. Good morning, Your Honors. May it please the court. Imran Zaidi for the government. So we're going to see a bit of you this morning, I guess. You're going to see a bit of me. And it will be the same Mr. How do we say it? Zaidi. Zaidi? Zaidi, yes. All right, thank you. Yes, Your Honor. You'll be seeing me in the first, the second, and the fifth case. I'll try to keep it as painless as possible. I suspect that's going to include me trying not to repeat myself and saying less and less affirmatively in successive arguments, certainly on the child abuse and generic definition side of things. But all of that, of course, is subject to the panel's questions. Well, you've sort of heard where your friend on the other side has focused us. So is the level of mens rea required for a conviction under California statute at least as high as that required by 8 U.S.C. section 1227A2EI? Yes, Your Honor. It's criminal negligence. I think I'm not fully following some of Petitioner's arguments here when it comes to the mens rea, but it's criminal negligence. We've accepted that. So when you say criminal negligence, please tell me what you mean by criminal negligence. Well, criminal negligence, Your Honor, as California has defined it, and somewhat similar to how other state statutes that we're going to talk about today have, is a gross deviation from a standard of care. What California said is that it is gross, reckless, or culpable conduct that is a substantial departure from what an ordinary person would do in their reasonable care. So let me make sure I understand that. The statute we're dealing with here, 273A of the California Penal Code, says willfully, willfully, willfully. Correct. But which the Supreme Court of the United States has always interpreted to mean in the criminal context, knowing and intentional. But the California Supreme Court says that it's not a lesser form of intent. Reckless, yes, but reckless is a separate question. They say even less than reckless, not involving intent, but involving just conduct that is, as you say, a gross deviation, et cetera. How is that consistent with federal law? I'm sorry, Your Honor. You're still talking about California's criminal negligence now, correct? Correct. I think it's consistent because it appears to provide what is even more than the criminal negligence that perhaps the Board contemplated here. Because when you talk about a gross deviation from, or the way Oregon and other statutes have described it, as a substantial departure from the ordinary level of care, California describes it as something that is not something on the plane of what a normal parent would think about or do. This is not thinking about a substantial risk. And in this case, it's something that would create a likelihood of harm that is death or great bodily injury to a child. Let me distinguish or have you distinguish for me the difference between this and recklessness. So the classic definition of recklessness is that you choose to take or to disregard, depending whether it's an omission or a commission, a risk of harm that is highly probable, substantial, in this case, to a child. That's recklessness. Everyone agrees that's covered. Criminal negligence, therefore, is something less than that. And the way it is less, as I read the California Supreme Court, is that it doesn't have to involve any conscious choice at all. It just happens to be behavior, even if undertaken accidentally, that creates a gross risk of harm to a child. And my question is, I'm not saying California can't criminalize that. I'm saying how is that consistent with Congress's notion of what a crime is? It's consistent, Your Honor, because under all the tools of construction, I'm not going to get into them now, but I will, of course, if the panel wants, that we've described for this case and for all of the cases this morning, this conduct, especially when you look at criminal neglect in this statute, encompasses a mens rea of negligence because the conduct itself or the words child neglect suggest or imply negligence. And when you look at the statutes that were contemporary – If I remember my first year torts class, negligence doesn't require any intent. Well, this is criminal negligence, Your Honor, and we're not saying that it requires. And the Supreme Court of California seems to say that criminal negligence doesn't require any mental state either. It just requires that the action be more severe, gross negligence in effect. Gross negligence, that's right. And I think to the extent Your Honor is suggesting that it doesn't involve intent or consciousness, we're fine with that. That's how we understand negligence too. Again, criminal negligence is, I think we are agreeing, a gross departure from an ordinary standard of care and something that would lead to a substantial and unjustifiable risk of harm. The California statute, does it require circumstances or conditions likely to produce great bodily harm or death? Yes. Is that what it is?  It says the statute three times over. Pardon me? The California statute, and again, of course, we have to defer to the California Supreme Court as to what the statute means. But 273A says, any person who under circumstances or condition likely to produce great bodily harm or death willfully causes or permits any child, etc., or willfully causes or permits the child to be placed in a situation, etc. There are three types of the statute. They use the term willfully, which under the common law was – and as the Supreme Court of the United States has repeatedly said, in the criminal context means intent. That's right, Your Honor. We don't disagree with that. I'm not sure that we disagree that much. We do understand criminal negligence to be less than willful. We don't believe it to require an intentional or willful or necessarily conscious act. But it does mean a substantial departure from the standard of care. And we do believe that that is consistent. I think your question is how does that match then the federal definition of child abuse? That's it. And that's where, under the tools of construction, we believe the very words child neglect, as the concurrence in Diaz-Rodriguez suggested, implicates negligence. Right. So that's my question. You mentioned child neglect several times, and that clearly shows that a criminal – a mens rea of criminal negligence is sufficient for the statute. But in your brief, you advocate for this, like, broader unitary definition. What do you want us to do? Should we follow what the Diaz-Rodriguez concurrence does, which just focuses on what child neglect says? Or do we need to adopt this grand unitary theory? No, Your Honor. The grand unitary theory is certainly what Velazquez-Herrera and matter of sorum set forth, and that is 100 percent our primary position here. The reason I go to child neglect, I think the concurrence gets directly – But after Loper-Bright, we don't – do we defer to either of those decisions? You don't defer to matter of sorum. That was the question before the court in Martinez-Cedillo and in Diaz-Rodriguez. Without question, you do not. Chevron is dead. But you have Velazquez-Herrera, which this court has already deferred to in its Fergozo decision. So let me be very clear. We're not writing on a blank slate here. As we set forth in our brief, this court has already deferred to the board's definition of crime of child abuse in matter of Velazquez-Herrera. And that means a few important things. But that was through Chevron though. That was through Chevron, Your Honor. But Loper-Bright makes very clear that courts defer to, with statutory stare decisis, precedents that have relied on the Chevron methodology. I don't read Loper-Bright that way, but go ahead. I understand, Judge Bumate, and I believe your reading is that the Loper-Bright stare decisis language is limited to the Supreme Court's precedents.  Is that right? You wrote my concurrence, my dissent. The dissent, yes. And so I don't think that's a – The dissent of Justice Barrett in a law review article many years ago before all this arose I think laid out very clearly why that would not apply to the circuit courts but only to the Supreme Court's stare decisis. Yes, Judge Rakoff, and I think that's the wrong reading of both statutory stare decisis in part for some of the reasons persuasively laid out in the Bastia's decision. One of the concurrences in Bastia's. But also I think the language of Loper-Bright itself talks about why the methodology – when you have a precedent that's relied on that methodology, to then say that that no longer governs is sort of just saying there's a special justification based on the fact that you relied on this methodology, that that's not good enough. We recognize that this court in the Lopez decision – and I recognize, Judge Bumenthal, that's what you were dissenting from the denial of von Bonk from. But that decision is already recognized that stare decisis applies to circuit court precedents that have relied on the Chevron methodology. Although even the Lopez majority opinion did overrule prior precedent based off of Chevron. So I think it's clearly – it's really unclear what our circuit precedent is on that. Right. So just assuming that we don't follow your deference model, that we – stare decisis model, what should we apply independently, like what Loper-Bright says we should do? Sure, and just to be very clear, we don't need – Yes. Yes. So we do believe it's a unitary concept, and there's two reasons. It's all now tools of construction, so no more Chevron, no more board deference. So two main reasons why we think the unitary definition is the best way to read the statute. First, starting with the plain language of the child abuse provision, you have a single category of crime of child abuse, child neglect, or child abandonment. Rather than discretely listed offenses such as the other crimes or conduct listed in that same provision, crime of domestic violence, crime of stalking. Now you add to that the fact that if you look at any definitions of these terms, whether through dictionaries, whether through state code, whether through federal code, criminal or civil, you see immediately a significant amount of overlap, of cross-referencing, and wide varieties of labels used for the same types of conduct. So we think the best – If I understand the petitioner's argument correctly, the petitioner asserts that child endangerment is distinct from child abuse, child neglect, and child abandonment, and therefore is not included in Section 1227. What is your response to that argument? Well, Your Honor, the response to that is part and parcel of what I was just saying, which is given how wide the divergence is and the labels used, when you look at what's inside the labels in these variety of state statutes, sometimes they say abuse. Sometimes they say neglect. Sometimes they say – and this is the plurality in the Diaz-Rodriguez-Ann Bonk opinion noted – you have criminal non-support. You have cruelty towards children. You have endangering the welfare of children. The terminology used to define these types of crimes or this type of conduct is all over the place. So we don't recognize crime of child endangerment to be a separate, distinct set of crimes. This is not something like burglary from the Supreme Court's decision in Taylor. This is not a common law offense. None of these are. And so you have a wide variety of labels. We don't know that there's any – we know that there is not a sort of uniform nomenclature for understanding these concepts. So I take what you're saying about how it's a crime of the three things. And so Congress is meaning something by that, right? I don't think we need to adopt your unitary theory, though. I think – can't we just say that because of the way they've constructed this, that we should be giving the broadest possible definition to all these subcategories? So we take the broadest possible definition of child abuse, child neglect, and child abandonment and then go that way. I don't think we – because the weird unitary theory, that doesn't make much sense to me because there's three separate things, and why do you need that? We don't need it, to be very clear. So I don't disagree with you that if you are going to go with the sort of discreetly defined crimes, which to be clear, we do that too. So if you go with a grand unitary theory, you still then need to do something to flesh out what that theory is, and that's what we did in our brief. But going with the way you described it and the way the concurrence in Diaz-Rodriguez laid it out, I do agree 100 percent, Judge Bumate, that you do broadly then describe or define the discreet crimes. And then, as the concurrence in you also did, is you say that the conduct for any particular case can then match collectively against all of those. In that case, you said, and I think correctly, that it happened to fall fully under child neglect. But even if it did not, anything that would fall outside of that could still match up against the other definitions, and we think that is an appropriate reading of the statute too. But again, for the reasons I said before, we still think the better overall reading would be unitary concept. But no, we don't think that that is indispensable to the government's position. We think that under the separately listed crimes, it would still make sense. So, this is a different point, and maybe I haven't articulated this as clearly as I should. I'm talking about the term crime. What did Congress mean by the single word crime? Before you get to what kind of crime it is. And what I was asking is, when Congress uses that term, doesn't it mean something that is committed with mens rea? Or at least reckless, which still involves a conscious decision. And therefore, if the Supreme Court of California has construed the statute that's involved in this appeal, although not in the other appeals, to involve, as I think you conceded a minute ago, crime that doesn't involve any state of mind at all. But just conduct that is gross negligence, but conduct. Isn't that inconsistent with what Congress prescribed? That's the point I'm trying to make. It's not, Your Honor, and let me be very clear. We were not conceding that this does not include a culpable mental state. We understand criminal negligence to be very much a culpable mental state that is sufficient for a crime. What's a mental state that's not reckless? What is a mental state that's not reckless? So the criminal negligence, again, as California here, and I think Oregon is similar, has described it as conduct that is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life or an indifference to consequences. Now, this – the – pardon me? I think the very quote you gave is talking about the conduct, right, not the mental state. It is focused on the conduct, but the concept of criminal negligence and the idea of a gross deviation from a standard of care that creates a substantial and unjustifiable risk is a conduct that's common to many states and to federal criminal law. It is sufficient for a culpable mental state for any statute so long as, again, it matches what that statute has provided as the culpable mental state. And I would just refer you, Your Honor, to the Cruz decision from the Fourth Circuit, which did a lot of this same work pre-Loper-Bright, but they did it outside of the Chevron context. Looked at the tools of construction and arrived at a very simple definition, which ends up being quite similar to what we're asking the court to do, which is just a culpable mental state, a crime that creates harm or a risk of likely harm to a child. And culpable mental state, the Fourth Circuit included, was criminal negligence because, again, that is tantamount to any culpable mental state for a crime. All right. I see my time is well up. My colleagues had their questions answered. I'll be back. All right. Okay. We took you over, so I gave you two minutes for rebuttal, Mr. Burke. So go ahead and – Thank you very much, Your Honor. I have three points I want to make in rebuttal. I'll rattle them off. I probably won't need the whole two minutes. But starting with the government's assertion that criminal negligence is necessary for a conviction under 273A sub A, referring to the Valdez case at page 789, my read of that suggests that there's no requirement for criminal negligence under prong number two. That's the prong that doesn't have willfulness attached to it. As pointed out by our visiting judge – I apologize, your name slipped me. But as pointed out by our visiting judge, three prongs of 273A sub A have willfulness. The second prong does not. And Valdez makes clear it's a general intent crime and a general intent crime only, requiring nothing more than the intent that would be required of a battery, which is a general intent to do the act, with absolutely no reference to an awareness of a consequence. The second point that I want to make is in response to your Honor's question about giving the broadest possible read, instead of taking this unified theory but giving the broadest possible read to each of the three aspects, I think exactly the opposite is what has to happen under the rule of lenity. Congress wrote an unclear law. Congress wrote a law we can't understand. We have to give it the strictest, the most restrictive read we possibly can to make this an alien-based read under the rule of lenity. Does lenity apply to immigration proceedings? I'm sorry? Does lenity apply to immigration proceedings? Sure it does. Yeah, absolutely. I might have authority at hand if you want me to separate. I would have to go dig through my papers. Don't worry about it. But yes, the rule of lenity applies. We take an alien-based read to immigration laws. It's not always applied. In fact, the authority, the sheet that I printed out with authority, has a list of cases where lenity was applied and lenity wasn't applied. All right, you're over your two, which is over your others. So just wrap up in 15 seconds. Oh, I can do it. Okay. And also, as far as the intent goes, even though I'm saying there is no intent, we're looking at removability. So a level of mental culpability is generally implied in a removability statute. So just the intent to do the act versus the intent of consequence has to be looked at in a very specific immigration-based way. That's the best I can do in the 15 seconds on that issue. Well, thank you both for your argument. This matter will stand submitted. And, of course, you're more than welcome to listen to the other arguments. Thank you very much, Your Honors. I appreciate the patience and the questions. Thank you. All right, this matter will be submitted. The next matter on calendar is Sotero, Rivera, Mendoza v. Pamela Bondi. That's 21-70107.
judges: CALLAHAN, BUMATAY, Rakoff